## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 18 2018, 10:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marc Lopez
The Marc Lopez Law Firm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Susanna Conlin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 18, 2018

Court of Appeals Case No.
49A02-1709-CR-2080

Appeal from the Marion Superior Court.
The Honorable Clayton A. Graham, Judge.
Trial Court Cause No.
49G07-1607-CM-27978

**Friedlander, Senior Judge**

[1]     Susanna Conlin appeals from her conviction of operating a vehicle while intoxicated endangering a person,[1] a Class A misdemeanor.  She argues the trial court erred by misapplying a statutory presumption in favor of the State and by abusing its discretion in the admission of evidence.

[2]     The following issues are presented for our review:

1.      Did the trial court misapply a statutory presumption under Indiana Code section 9-30-6-15(b) (2001) when finding Conlin guilty of operating a vehicle while intoxicated endangering a person?

2.      Did the trial court err by admitting Conlin's statement, which she made prior to receiving *Miranda*[2] warnings, that she was driving the vehicle at the time of the accident?

3.      Did the trial court err by admitting statements made by the passenger of Conlin's vehicle under the excited utterance exception to the hearsay rule?

We affirm in part, and reverse and remand in part.

[3]     At approximately 11:04 p.m. on July 20, 2016, Conlin was driving a vehicle, in which Brett Lanpher was a passenger, when they were involved in a single-vehicle crash at Exit 37D on Interstate 69 South.  Another vehicle had sped past Conlin's vehicle causing her to lose control, hit a guardrail, go off the road, and

---

[1] Ind. Code § 9-30-5-2(b) (2001).

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

flip her car on its hood up to three times, wrecking her vehicle. Extensive damage encompassed the entire vehicle.

[4] At 11:12 p.m. Indiana State Trooper Stephon Mason was dispatched to the location of the accident. Trooper Mason and emergency personnel arrived at the scene at 11:34 p.m. Both Conlin and Lanpher were outside the vehicle and had begun walking up the hill from where the vehicle finally came to rest. When Mason asked the two about the cause of the accident, both Conlin and Lanpher responded that while Conlin was driving the vehicle, another car rapidly passed causing Conlin to lose control of the vehicle. While gathering this information, Trooper Mason observed that Conlin had a laceration below one of her eyes and was bleeding. He further observed that Conlin's eyes were red, her speech was slurred, her balance was poor–swaying back and forth, and he detected an odor of alcohol from her person. The officer testified that Lanpher also exhibited signs of intoxication.

[5] Conlin was evaluated by medical personnel on the scene, but declined medical attention. Trooper Mason then asked Conlin if she had any physical impairments that would affect her performance of field sobriety tests. After Conlin denied having any physical impairments, she took the horizontal gaze nystagmus (HGN) test and failed. No other field sobriety tests were administered due to safety concerns and lighting issues. Based upon the officer's observations and Conlin's failure to pass the HGN test, Trooper Mason believed that Conlin was intoxicated.

Conlin initially consented to a chemical breath test, but then refused to complete the test by providing an inadequate breath sample and by spitting out the mouthpiece during at least three subsequent attempts at testing. Trooper Mason informed Conlin that, in his opinion, her behavior constituted a refusal of the test. He then sought and was granted a warrant for a blood draw. Conlin was transported to a hospital where the blood draw occurred at 2:14 a.m. The results of the blood draw showed that Conlin's blood alcohol content was .098.

On July 21, 2016, the State charged Conlin with one count of Class A misdemeanor operating a vehicle while intoxicated endangering a person. The State later amended the charging information to add a count of Class C misdemeanor operating a vehicle with a BAC of .08 or more.[3] At the conclusion of Conlin's bench trial, the trial court found her guilty on both counts and found that the Class C misdemeanor charge merged with the Class A misdemeanor count for sentencing purposes.

More specifically, the record reflects that at the end of Conlin's bench trial, the trial court found Conlin guilty of operating a vehicle while intoxicated endangering a person, a Class A misdemeanor. Tr. Vol. II, p. 91. The trial court further stated that the "Court also finds Susanna Conlin guilty of Count II, having a blood alcohol content over .08. For sentencing purposes Count II

---

[3] Ind. Code § 9-30-5-1(a)(1) (2001).

will merge into Count I." *Id.* The trial court's written courtroom minutes reflect that the trial court's judgment was a finding of guilty on both counts with Count II merging with Count I for sentencing purposes. Appellant's App. Vol. II, p. 89. The trial court's sentencing order shows that the disposition of the charges resulted in a finding of guilty on Count I and that for Count II the conviction was merged. *Id.* at 83. The trial court imposed a one-year sentence on Count I.

# 1.

[9] Conlin's first argument on appeal is that the trial court misapplied a statutory presumption under Indiana Code section 9-30-6-15(b) when finding Conlin guilty of operating a vehicle while intoxicated endangering a person. Because the charges Conlin faced were offenses under Indiana Code chapter 9-30-5, the statutory presumption was potentially applicable. The statutory presumption provides as follows:

> If, in a prosecution for an offense under IC 9-30-5, evidence establishes that:
>
> (1) a chemical test was performed on a test sample taken from the person charged with the offense within the period of time allowed for testing under section 2 of this chapter; and
>
> (2) the person charged with the offense had an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per:
>
> (A) one hundred (100) milliliters of the person's blood at the time the test sample was taken; or
>
> (B) two hundred ten (210) liters of the person's breath;

the trier of fact shall presume that the person charged with the offense had an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per one hundred (100) milliliters of the person's blood or per two hundred ten (210) liters of the person's breath at the time the person operated the vehicle. However, this presumption is rebuttable.

Ind. Code § 9-30-6-15(b).

[10] The test must be administered within three hours after the law enforcement officer had probable cause to believe the person committed an offense under Indiana Code chapter 9-30-5 or a violation under Indiana Code chapter 9-30-15. Ind. Code § 9-30-6-2(c) (1994). The three-hour time limit begins from the moment at which the vehicle was operated in violation of Indiana Code chapter 9-30-5, not from the moment at which the officer ideates probable cause. *Mordacq v. State*, 585 N.E.2d 22 (Ind. Ct. App. 1992). Indiana Code sections 9-30-6-2 and 9-30-6-15 allow a fact-finder to relate the driver's blood alcohol content at the time of a chemical test back to the blood alcohol level at the time of the operation of the vehicle if done within the three-hour time period. *Allman v. State*, 728 N.E.2d 230 (Ind. Ct. App. 2000). There is no dispute that the test was administered outside the three-hour time period.[4]

---

[4] At trial the State argued that the test was conducted "well within that three-hour time limit," citing Trooper Mason's arrival time of 11:34 p.m. and the test time of 2:14 a.m. Tr. Vol II, p. 87. On appeal, the State concedes that the blood test was taken outside the three-hour time period, thus depriving the State of the benefit of the statutory presumption. Appellee's Br. p. 14. Although the test was not conducted within the three-hour time period, that affected only the presumption not the test's admissibility. *Mannix v. State*, 54 N.E.3d 1002 (Ind. Ct. App. 2016).

[11] Conlin moved for a voluntary dismissal which was denied by the trial court. Conlin had argued that Count II should be dismissed because the test was conducted outside the three-hour time period and the State had failed to provide any extrapolation evidence. Conlin further argued that Count I should be dismissed because the other evidence of intoxication was insufficient to show she was intoxicated.

[12] On appeal, one of the State's arguments is that any error in the trial court's denial of what it characterizes as Conlin's motion for a directed verdict "was harmless as the trial court did not enter judgment of conviction on the BAC charge." Appellee's Br. p. 11. The State supports this conclusion by arguing that Conlin "only stands convicted of Class A misdemeanor operating a vehicle while intoxicated endangering a person, which does not require proof of any particular BAC."[5] *Id.* We disagree that the error is harmless.

[13] Indiana Code section 35-38-1-6 (1983) provides that if "a defendant is charged with an offense and an included offense in separate counts [] and . . . is found guilty of both counts[,] judgment and sentence may not be entered against the defendant for the included offense." A conviction of both an offense and its lesser included offense is tantamount "to convicting a defendant twice for the same conduct." *Parks v. State*, 734 N.E.2d 694, 701 (Ind. Ct. App. 2000), *trans.*

---

[5] The State notes that the record is unclear as to whether the trial court vacated the judgment of conviction on Count II, or just merged the convictions for sentencing purposes. Appellee's Br. at 16 n.1. The State acknowledges that if the trial court did the latter, such is not sufficient to cure a double jeopardy violation and the conviction should be vacated. *Id.*

*denied*. An offense is a lesser included offense if it differs from another only in the respect that a less serious risk of harm to the public interest is required to establish its commission. *Watson v. State*, 972 N.E.2d 378 (Ind. Ct. App. 2012).

[14] The Indiana General Assembly has classified the offense of operating a vehicle while intoxicated in a manner that endangers a person as a Class A misdemeanor, whereas the offense operating a vehicle with a blood alcohol content of at least .08 percent but less than .15 percent is a Class C misdemeanor. By the classification of the offenses, our legislature has determined that the risk caused by an intoxicated driver who drives in a manner that endangers a person is greater than the risk caused by a driver with a blood alcohol content of at least .08 percent but less than .15 percent. *Cf. Sering v. State*, 488 N.E.2d 369 (Ind. Ct. App. 1986) (legislative intent evidenced by disparate classification of two offenses).

[15] In *Townsend v. State*, 860 N.E.2d 1268, 1270 n.1 (Ind. Ct. App. 2007), the trial court entered judgment on a battery count, but merged the count with an attempted murder count. The trial court did not sentence the defendant for the battery count, but the chronological case summary indicated that judgment was entered on that count. *Id.* On appeal, the battery conviction was reversed and the matter was remanded to the trial court to vacate the factually lesser-included offense. *Id.*

[16] Here, the charge against Conlin alleging Class C misdemeanor operating a vehicle with a blood alcohol content of at least .08 percent but less than .15

percent is factually a lesser-included offense of Class A misdemeanor operating a vehicle while intoxicated in a manner that endangers a person. We must reverse Conlin's Class C misdemeanor conviction and remand with instructions that the trial court vacate the conviction.

[17] Because we have reversed and remanded the matter of Conlin's conviction on Count II, it is unnecessary to determine whether the trial court misapplied the statutory presumption with respect to that charge.

[18] With respect to Count I, there is no evidence in the record that the trial court mentioned the statutory presumption in finding Conlin guilty. Intoxication, in pertinent part, is defined by statute as being under the influence of alcohol so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties. Ind. Code § 9-13-2-86 (2013). The State must establish that the defendant was impaired, regardless of her blood alcohol content. *Miller v. State*, 641 N.E.2d 64 (Ind. Ct. App. 1994), *trans. denied*. Evidence which can establish impairment includes: (1) the consumption of significant amounts of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech. *Fields v. State*, 888 N.E.2d 304 (Ind. Ct. App. 2008).

[19] The blood draw test results showed that Conlin's blood alcohol content was .098 three hours after the accident. Trooper Mason testified that when he arrived at the scene of the accident, Conlin and Lanpher were walking from the

car and up the hill. He detected the odor of alcohol coming from Conlin. Her eyes were red, and her speech was slurred. Her balance was poor and she was swaying back and forth. Mason testified that during transport for the blood draw Conlin told him she had consumed her last alcoholic beverage at 6:00 p.m. on July 20, 2016.

[20] Trooper Mason also testified that Conlin failed the HGN field sobriety test. She challenges that evidence by arguing that Mason went against his training by conducting a field sobriety test on a subject who had a head injury, referring to the laceration under her eye. We consider this a request to reweigh the evidence and decline to do so. *Drane v. State*, 867 N.E.2d 144 (Ind. 2007). The trial court as the trier of fact heard the testimony and found Conlin guilty of Count I. We find no error here.

## 2.

[21] Next, Conlin argues that the trial court erred by admitting her statement, which she made prior to receiving *Miranda* warnings, that she was driving the vehicle at the time of the accident.

[22] Our standard of review of the admissibility of evidence is well established. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Timberlake v. State*, 690 N.E.2d 243 (Ind. 1997). An abuse of discretion will be found if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Joyner v. State*, 678 N.E.2d 386 (Ind. 1997). If the trial court abused its discretion by admitting the

challenged evidence, we will only reverse for the error if the error is inconsistent with substantial justice or if a substantial right of the party is affected. *Timberlake*, 690 N.E.2d 243. Error caused by the admission of evidence is harmless error for which we will not reverse a conviction if the erroneously admitted evidence was cumulative of other evidence that was appropriately admitted. *Stephenson v. State*, 742 N.E.2d 463 (Ind. 2001), *cert. denied*.

[23] Conlin's statements were made in response to Trooper Mason's questions about the cause of the accident. *Miranda's* procedural safeguards apply only to custodial interrogation. *Orr v. State*, 472 N.E.2d 627 (Ind. Ct. App. 1984). They are not applicable to general on-the-scene investigation in a noncoercive atmosphere. *Id.* Trooper Mason testified that Conlin was not in custody when she made those statements. She and Lanpher were walking up the hill when they encountered the trooper and were not restrained. After those statements were made, Conlin was taken to the ambulance to be evaluated by medical personnel and then later performed the HGN test.

[24] Conlin relies on *Moore v. State*, 723 N.E.2d 442 (Ind. Ct. App. 2000), but that case is factually distinguishable. In *Moore*, upon the officer's arrival at the scene of an accident, he placed the defendant in the back seat of his car. The defendant could not leave the scene and had a duty to provide information for the officer's accident report. A panel of this court described it as a custody-type situation, but that the defendant was not in custody until the officer knew or should have known he was investigating a potential crime rather than just an accident when questioning the defendant. We held that *Miranda* warnings were

not required because the statements were made when the defendant was not in custody and the officer was not yet aware that he was at a crime scene. *Id.*

The facts here demonstrate that, unlike *Moore*, Conlin was not in a custody-type situation, but like *Moore* the officer did not yet know he was investigating a crime when the statements were made. *Miranda* warnings were not necessary. We find no abuse of discretion in the trial court's decision to deny the oral motion to suppress and admit Conlin's statements.

## 3.

Conlin contends that the trial court erred by admitting statements made by Lanpher under the excited utterance exception to the hearsay rule. As stated above, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Timberlake*, 690 N.E.2d 243.

Lanpher did not testify at trial. Trooper Mason testified about Lanpher's responses to him while investigating the cause of the accident. The challenged testimony is hearsay under Indiana Evidence Rule 801. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted, and it is inadmissible unless it falls under a hearsay exception. Ind. R. Evid. 801. An excited utterance is "[a] statement related to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" and is not excluded by the hearsay rule. Ind. R. Evid. 803(2).

"To meet the excited utterance exception, three elements must be present: (1) a 'startling event or condition' has occurred; (2) the declarant made a statement

while 'under the stress or excitement caused by the event or condition;' and (3) the statement was 'related to the event or condition.'" *Young v. State*, 980 N.E.2d 412, 421 (Ind. Ct. App. 2012) (quoting *Lawrence v. State*, 959 N.E.2d 385, 389 (Ind. Ct. App. 2012)). "This is not a mechanical test, and the admissibility of an allegedly excited utterance turns on whether the statement was inherently reliable because the witness was under the stress of the event and unlikely to make deliberate falsifications." *Sandefur v. State*, 945 N.E.2d 785, 788 (Ind. Ct. App. 2011) (quoting *Boatner v. State*, 934 N.E.2d 184, 186 (Ind. Ct. App. 2010)). "The heart of the inquiry is whether the declarant was incapable of thoughtful reflection." *Id.* "Although the amount of time that has passed is not dispositive, a statement that is made long after the startling event is usually less likely to be an excited utterance." *Id.*

[29] Conlin cites to the time–thirty minutes–between the accident and when Lanpher made the statements to Trooper Mason. We have already noted that the amount of time that has passed is not dispositive. *Id.* Here, Lanpher was in the process of ascending the hill from the vehicle's resting place when Trooper Mason asked about the cause of the accident. Lanpher, using animated and colorful language, described the events that had happened and identified Conlin as the driver of the vehicle. All three elements for an excited utterance were present.

[30] We also note that both before and after Conlin received her *Miranda* warnings, she gave the same responses to Trooper Mason. Lanpher's statements were cumulative of those made by Conlin.

[31] Conlin also argues that the statements should not have been admitted because she was deprived of the opportunity to cross-examine Lanpher about those statements, citing *Michigan v. Bryant*, 562 U.S. 344 (2011). Conlin argues that thirty minutes after the crash, even though Conlin and Lanpher had not received medical assistance, there was no ongoing emergency.

[32] Our supreme court addressed *Michigan v. Bryant* and other cases decided before it in *Ward v. State*, 50 N.E.3d 752, 757-58 (Ind. 2016). The court, quoting *Bryant*, wrote the following:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. . . . The existence vel non of an ongoing emergency is not the touchstone of the testimonial inquiry. Rather, whether an ongoing emergency exists is simply one factor . . .that informs the ultimate inquiry regarding the primary purpose of an interrogation.

(internal quotation marks and citations omitted).

[33] The circumstances here show that Lanpher's responses to Trooper Mason's questions "what happened" and "are you okay," were non-testimonial in nature. Tr. Vol. II, p. 26. The primary purpose of Trooper Mason's questions was to determine the cause of the accident and to determine the extent of the injuries of those involved in a severe roll-over accident. Applying *Bryant* and

*Ward* to this case, we conclude that the Trooper was asking questions as part of an ongoing emergency, the primary purpose of which did not involve establishing evidence for trial. Conlin's right to confrontation was not violated, and the trial court did not abuse its discretion by admitting the statements under the excited utterance exception to the hearsay rule.[6]

In light of the foregoing we affirm in part, and reverse and remand in part.

Judgment affirmed in part, and reversed and remanded in part.

Baker, J., and Najam, J., concur.

---

[6] The trial court stated that the statements were admitted for a limited purpose without explaining what that limited purpose was. We consider this statement to be superfluous because Lanpher's statements were properly admitted.